**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

**CIVIL ACTION NO. 3:08-CV-229-H**

| | |
|---|---|
| E.I. DUPONT DE NUMOURS<br>AND COMPANY | PLAINTIFF |
| V. | |
| MECHANICAL INTEGRITY, INC.,<br>NDT EQUIPMENT SERVICES, LTD.,<br>AND MIKE WALKER | DEFENDANTS |

**MEMORANDUM OPINION**

This case is basically a contract dispute between Plaintiff, E.I. DuPont de Numours and Co. ("DuPont"), and a contractor, Mechanical Integrity, Inc. ("MI"), it hired to perform certain subterranean pipeline testing. MI hired NDT Equipment Services, Ltd. ("NDT") and its employee, Mike Walker, as subcontractors to perform the testing and prepare a report of the results. DuPont has brought breach of contract, negligence, negligent misrepresentation and fraud claims against MI, NDT and Walker. In turn, MI brought breach of contract, negligence, negligent misrepresentation and breach of implied warranty claims against NDT, asserting that if MI is liable to DuPont, it is based solely on the actions of NDT, a theory that sounds in indemnity. At this time, NDT and Walker move for summary judgment on all claims filed by both MI and DuPont.

For the reasons that follow, the Court concludes that most of the existing claims shall remain for trial.

**I.**

On February 2, 2004, MI agreed with DuPont to perform an ultrasonic inspection of a

four-inch diameter pipeline used to supply chloroform to DuPont's Louisville manufacturing plant. The only record of the agreement is a purchase order issued on that date. The exact scope of the work is highly contested by the parties. DuPont alleges that it contracted for an in depth, complete inspection of the pipeline to locate any potential problems with the line. MI and NDT contend, however, that DuPont verbally instructed them to test small portions of the pipeline and that the testing was more of a demonstration of the ultrasonic technology than a complete analysis. The purchase order does not specify the scope of the testing and the deposition testimony is contradictory.

After entering the purchase order, MI hired NDT to conduct the testing and prepare a report of the results. It appears that subcontracting was prohibited by the initial purchase order and DuPont asserts that MI attempted to conceal the fact that NDT was a subcontractor by giving the appearance that Mike Walker, NDT's employee responsible for the testing, was employed by MI. This fact, too, is highly contested by the defendants. Regardless, Walker conducted some testing on the pipeline and submitted a report of his findings to MI, which submitted that report with minimal changes to DuPont. The report indicated that a majority of the pipeline was in satisfactory condition, but a few sections were in need of possible repair. DuPont conducted some of those repairs and relied on the report, as well as alleged statements of Walker and MI employees that the testing went well and there were no major areas of concern, for its belief that no other sections of the pipeline were impaired.

In November of 2005, DuPont hired MI to again test the pipeline using the same technology. By this time, MI was capable of performing such testing itself, so no subcontractor was used. When this test was conducted, a significant breakdown in the pipeline was discovered

and chloroform was leaking into the surrounding environment. DuPont spent over $2,000,000.00 repairing this leak. DuPont asserts that the first test should have revealed the problems with the section of the pipeline that leaked in 2005. MI and NDT do not appear to directly contest this fact. Rather, they both contend that the leaking section of the pipeline was not to be tested under the original contract with DuPont and that the report clearly indicated that such testing was not done.

DuPont's claims against MI, NDT and Walker are all based on the failure of the defendants to properly test the section of the pipeline that eventually leaked and their misrepresentations that such testing was conducted and revealed no issues. All of MI's claims against NDT[1] are based on theories of indemnification, contribution and/or apportionment. The Court will consider each claim in turn.

## II.

Summary judgment is appropriate only where the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 569(c). "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Then "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).

---

[1]MI has voluntarily dropped all claims against Walker personally.

### III.

It is undisputed that DuPont did not have a contract with NDT. Rather, DuPont's only contract was with MI, who subcontracted the work to NDT. Still, DuPont asserts that it may maintain a breach of contract action against NDT because DuPont was the intended third-party beneficiary of the contract between NDT and MI.

> It is well established that a third person may, in his own right and name enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. But not every contract will give one who is not privy thereto a right of action therein, even though such third party might have received a benefit from the completion of the contract. Only a third party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right.

*Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (citations and quotations omitted). If DuPont was a third-party beneficiary of the MI-NDT contract, it is because it was a creditor beneficiary; there is no argument DuPont was a donee. "A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary." *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985). Under DuPont's argument, MI was the promisee and it had a duty to DuPont, the beneficiary, to conduct pipeline testing. MI then contracted with NDT with the express intent that NDT provide testing for DuPont in satisfaction of MI's duty to DuPont.

In analyzing whether DuPont can proceed under contract, the overarching question is whether a property owner can sue as a third-party beneficiary of a contract between the property owner's general contractor and his subcontractor. The Court has found no Kentucky state court opinions directly on point. However, several federal district courts have tackled the issue and

have reached the same conclusion: the property owner is not a third-party beneficiary to the contract between the general contractor and the subcontractor. *See Holcomb v. Womack*, No. 05-CV-84-DLB, 2005 WL 2456190 (E.D.Ky. Oct. 4, 2005); *Louisville Gas & Electric Co. v. Continental Field Systems, Inc.*, 420 F.Supp.2d 764 (W.D.Ky. 2005).

In *Holcomb*, the court noted that several states, including Ohio, Florida and Mississippi, specifically prohibit a property owner from recovering for breach of contract against a subcontractor under a third-party beneficiary analysis. *Holcomb*, 2005 WL 2456190, at * 2. Moreover, the court cited *Commonwealth Dept. of Highways v. L.G. Wasson Coal Mining Corp.*, 358 S.W.2d 347 (Ky. 1962), as illustrative. In *Wasson*, the Kentucky Court of Appeals found that a subcontractor was not a third-party beneficiary of the contract between the Kentucky Highway Department and the general contractor that hired the subcontractor. Like the *Holcomb* court, this Court believes that *Wasson* strongly indicates Kentucky courts would find that a property-owner likewise is not a third-party beneficiary of the contract between the general contractor and the subcontractor.

Examining the Restatement (Second) of Contracts § 302, this Court, in *Louisville Gas & Electric Co. v. Continental*, also reasoned that the property owner was not a third-party beneficiary. The Restatement provides the following illustration: "A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C in an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building." Restatement (Second) of Contracts § 302 cmt. e (2009). Thus, the Restatement is in agreement; a property owner cannot sue a subcontractor for breach of its contract with the general contractor under the theory of third-party beneficiary status. The Court finds this to be

5

the well reasoned analysis that Kentucky Courts would adopt. As such, DuPont cannot maintain a breach of contract action against NDT.

As for a claim against Walker personally, any breach of contract action is improper. Walker was not a party to any contract - either with DuPont or MI. DuPont argues that Walker can be personally sued because he did not reveal that he was an agent for NDT. While an agent may be liable for breach of contract where he does not reveal his agency in some circumstances, this is not the proper case. As explained, NDT itself cannot be liable to DuPont for breach of contract. Certainly, then, NDT's employee, Walker, cannot be liable. Moreover, DuPont admits that it knew Walker was *an* employee; it just contends that it believed Walker was employed by MI. Thus, DuPont was well aware that Walker was an agent and, therefore, would not be personally liable.

## IV.

DuPonts' second claim against NDT and Walker is for negligence. DuPont argues that NDT and Walker had a duty to inspect the pipelines and report findings to DuPont competently. These duties were created by an agreement between MI and NDT. There is certainly no allegation that, in the absence of the contract, Walker and NDT had an independent duty to conduct the inspection or file the report. Where the alleged tort is, in fact, the breach of a contract, a party who was not a party to the contract or in privity with the contract cannot bring a negligence action. *See Presnell*, 134 S.W.3d at 579 ("Although privity is no longer required to maintain a tort action, one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists in the breach of the contract."). As discussed above, DuPont was only an incidental beneficiary of the contract. Therefore, DuPont cannot

maintain its tort action based on NDT and Walker's breach of the duties contained in the MI-NDT contract. *See id.* at 579-580 ("[U]nless Presnell breached some duty to EH apart from its duties to DeLor under the contract - *i.e.* an independent duty - EH, who was, at the most, an incidental beneficiary of the contract between DeLor and Presnell, cannot maintain an action in negligence against Presnell.").

V.

While *Presnell* clearly prohibits DuPont's negligence claim against NDT and Walker for any failure to competently inspect the pipelines or report findings, DuPont's negligent misrepresentation claim is another matter. The Kentucky Supreme Court adopted the Restatement (Second) of Torts § 552 to define negligent misrepresentation. The Restatement provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Presnell*, 134 S.W.3d at 580.

Here, DuPont alleges that Walker, working for NDT, told DuPont that the testing went well and there were no significant problems other than those noted in the final report. DuPont claims that these statements, as well as others, led DuPont to justifiably believe that the entire pipe section had been tested and there was no problem with the area that eventually leaked. Such allegations fall squarely within the definition of negligent misrepresentation adopted by the

Kentucky Supreme Court.[2] Additionally, the individual employee can be held personally liable for his own torts, so the action against Walker personally is proper. *See Carr v. Barnett*, 580 S.W.2d 237, 240 (Ky. Ct. App. 1979) ("Thus, we note that an agent is personally liable for his own tortuous acts even though performed within the scope of his employment and under conditions which impose liability upon the principal also.").

This is an odd circumstance to allege negligent misrepresentation because it is so close to pure negligence which the Court has dismissed. Nevertheless, for now the Court will allow it to remain.

## VI.

DuPont's final claim against NDT and Walker is for fraud. "In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

DuPont alleges that Walker, on behalf of NDT, told DuPont the test was conducted without issue and that there were no areas of immediate concern. Moreover, DuPont asserts that the report prepared by Walker and NDT indicated that the area which eventually leaked had no problems.[3] It is undisputed that such statements, if made, were false. The area that eventually leaked was significantly damaged at the time the test was conducted. DuPont also alleges that

---

[2] While NDT asserts that it made no representations to DuPont, this is a factual dispute that cannot be resolved on a motion for summary judgment.

[3] While NDT vigorously argues that the report is "clear on its face" that no testing was conducted at the site in question, the Court does not believe it is so clear. Certainly, the report could be interpreted as NDT construes it, but it could also be interpreted as DuPont construes it. Such a factual dispute precludes summary judgment.

there were markers on the test that should have alerted Walker to the damage, making his behavior at least reckless. Moreover, NDT and Walker contend that the area was not tested.

If DuPont can prove that Walker knowingly represented the area was tested without problem, then Walker's misrepresentations were intentionally made. Finally, DuPont informed Walker of its need to test the areas of the pipeline obstructed from sight and it clearly relied on their statements that the pipeline was in satisfactory condition. If DuPont can provide sufficient evidence to support these facts, DuPont will be able to establish their claim. Though the Court has doubts about this claim, taken in a light most favorable to DuPont, the non-moving party, there are sufficient facts to proceed on the claim of fraud.

## VII.

NDT also moves for summary judgment on all of MI's crossclaims. MI's claims are phrased as breach of contract, negligence, misrepresentation and breach of implied warranties. Some of these claims, however, sound more in the nature of indemnification than the underlying actions. MI asserts that if it is liable to DuPont, NDT should be liable to it because NDT was the active party responsible for the testing and providing the results.

## A.

NDT argues that summary judgment is appropriate on the breach of contract claim because it fully performed its duties under the MI-NDT contract. The terms of that contract, however, are not entirely clear. There was no written agreement between the parties. Accepting the facts most favorable to MI, the non-moving party, it appears that NDT was to conduct testing at DuPont, accompanied by an MI representative, at the direction of DuPont. As discussed above, DuPont alleges that the testing was not completed per the directions it gave to MI and

Walker, NDT's employee. Therefore, if the jury finds that MI was obligated to conduct a full testing of the pipeline as DuPont alleges and the jury finds that MI contracted with NDT to perform the full testing DuPont directed, then the claim for breach of contract will be sustainable. Factual disputes of this nature preclude summary judgment.

## B.

MI's negligence and negligent misrepresentation claims against NDT are better stated as common law indemnification claims. MI alleges that if it is found negligent in conducting or reporting the tests, it was the negligence and/or misrepresentations of NDT that actively caused the injury to DuPont. Under such a theory, NDT would be liable to MI for any damages it owes DuPont.

> Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained.

*Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 167 (Ky. 1949). The actions allegedly causing damage to DuPont were conducted by NDT. Specifically, NDT was the party that conducted the actual testing and prepared the report of the results. Therefore, if those acts caused damage to DuPont and MI is held liable, NDT may be liable as the party whose actions created the hazard.

However, NDT's liability is not automatic. It must be determined that NDT acted wrongfully for NDT to be liable for indemnity. *See Degener v. Hall Contracting Co.*, 27 S.W.3d 775, 780 (Ky. 2000) ("[T]he right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari

delicto."). Theoretically, it is possible for the jury to determine that MI was negligent because it failed to fully conduct the tests as ordered by DuPont. At the same time, the jury could find that NDT did everything it was obligated to do under its agreement with MI. If NDT had no duty under the MI-NDT contract to test the portion of the pipe that eventually leaked, then certainly NDT cannot be liable to MI, even if the jury determines that under the DuPont-MI contract MI was responsible for testing that portion of the pipeline and was negligent in failing to do so. It will be the terms of the contracts and the duties those contracts imposed that will determine whether indemnity is available. Because the terms of the agreements are disputed, summary judgment is inappropriate at this time.

## C.

MI's final claim against NDT is for breach of implied warranties. While MI has filed a response brief addressing all other issues raised by NDT's motion for summary judgment, MI has not responded on the issue of implied warranties. The initial third-party complaint merely asserts that NDT impliedly warranted that its work would be free from defect and performed in accordance with industry standards. Nowhere does MI explain the origins of such implied warranties or how those warranties were breached. In fact, MI readily admits in its response that it believes all of NDT's work was accurately and adequately done. To the extent that MI's breach of implied warranty claim is based in the Kentucky version of the UCC, such implied warranties only apply to contracts for the sale of goods. *T-Birds, Inc. v. Thoroughbred Helicopter Service, Inc.*, 540 F.Supp. 548, 551 (E.D. Ky. 1982). This was clearly a services only contract; no goods exchanged hands. Thus, the Court has been unable to find any basis for the implied warranty claim and summary judgment is appropriate.

The Court will issue an Order consistent with this Memorandum Opinion.

cc:     Counsel of Record